This is maybe the most intimidating place that I've ever stood in my life here at Harris and I'm thankful for the opportunity to be here. My name is Michael Wall, here on behalf of Napier Fitzgerald and Kirby, the appellants in this case, most particularly... Wait, let's just get all the noise taken care of here. Tile floors make a lot of noise. Okay, thank you. Thank you, Your Honor. I'm here particularly for Brian Fitzgerald, who is the principal who engaged the case in the first place and who has been involved in this matter from the beginning. And I don't believe that there's any real dispute about what happened in this case. There's no factual dispute in terms of who said what, when, or how this actually happened. The dispute in this case is about how the parties characterize these facts. And I think that if you read the briefs, it's almost like we're talking about two separate cases. And I believe that Mr. Fitzgerald's view of this case is so diametrically opposed to Mr. Crockett's view of this case that that's where the reason for the dispute and where the differences come in. Mr. Crockett has taken the position from the beginning and still takes the position throughout his briefs that this is simply a matter of a contingency agreement where the client fired the attorney and the attorney is therefore entitled to nothing except quantum merit value of his services, which Mr. Crockett has always insisted and continues to insist is nothing but a payment for the hours that that attorney put in. Isn't that what quantum merit usually is? That's not really what quantum merit is. It can be just for the hours, but it can also be for the value to the case. And there's a lot of case law that says that even to the extent of if it's warranted, the amount of the contract. Now we argued this issue from the very first hearing with Judge Proe, but we do not believe that this case breaks down that way. We do not believe that Mr. Fitzgerald is only entitled to the quantum merit value of his services. That has always been Mr. Crockett's position. And we believe that this is different. This is a co-counsel situation where Mr. Fitzgerald found the client, signed up the client, and there was an agreement. And there was a specific agreement between Mr. Crockett and Mr. Fitzgerald. And simply because the client fired Mr. Fitzgerald from the contingency agreement does not do away with the obligations that exist, the contractual obligations that exist between Mr. Crockett and Mr. Fitzgerald. He's entitled to the benefits of that contract, whatever that contract is. It's not simply the quantum merit value. We've had a lot of discussion in the briefs about whether there's two contracts or whether there's one contract, and that Mr. Fitzgerald has admitted that there's one contract when he was originally pleaded that there was two contracts. And this is really a red herring. The way this came about was that initially Mr. Fitzgerald's position has always been the same. I brought this action. I brought this case to Mr. Crockett. He agreed to pay me a referral fee. We agreed to work the case together also. There's nothing inconsistent about that. We never set forth who would do what, but it was obviously always clear from the beginning that Mr. Crockett would be handling the laboring war of this. I would have the costs, and that there would be a contingency. It was always an agreement between those parties that there was a value to finding the client and bringing the case. So that agreement's ever set forth in writing or described in a writing? That part of the agreement did not make its way into the writing, and that's part of the problem in this case. The writing itself was not an integrated contract. It was – there's no integration clause. And the understanding of the parties with respect to what the agreement was goes to the parts of that contract that are silent. And Judge Crowe recognized that himself. The parties simply didn't talk about this. And because the parties haven't decided – The retainer agreement does say, It is further agreed and understood that the fees paid to attorneys at the time of the settlement shall be divided equally between Crockett and Myers and Brian Fitzgerald. And nothing in that sentence says that Brian Fitzgerald needs to still be representing the – Ms. Nostro at that point. It's sort of implicit in the fact that this is a retainer agreement. Isn't that your problem? In other words, if you just read that sentence, you could say, okay, it's now settled, and so he owes them money. But the problem is that this is all in the middle of a retainer agreement with the client, and the client is fired. That's actually not – that's actually the part of the agreement that supports Mr. Fitzgerald's position. I understand that. That's what I'm saying. But I'm saying that you say there's nothing in here. There is something in here. There's that. There is – there's something in there about the division of the fees, but we did not resolve – it doesn't resolve all of the issues. And one of the issues was – Like what happens if he gets fired. Exactly. And so it's not an integrated agreement, and there should have been an opportunity to present the evidence of what the parties had agreed to. And in fact, this was decided on a motion for failure of a stated claim, and at that point in time, the judge should have taken as true the pleadings. And those pleadings were that there was an agreement that Mr. Fitzgerald was entitled to that fee, both because he was a finder as a referral fee, and also there was the allegation that they had worked this case together. Now, there's the suggestion that this has been a – something that Mr. Fitzgerald was making up as he went along because he kept losing, but that wasn't it at all. The theory has been consistent from the beginning. The amendments to the pleadings after arguments to Judge Proe were allowed because the theory was consistent, and Judge Proe allowed for those amendments. The problem here is that it's – it's – whether you view it as one agreement or two agreements with – with different parts, the problem is that there was never an opportunity to bring this to trial in the proper way. There's one agreement. There's no doubt from the documents that were presented that there was a referral and that there was an expectation that there would be payment from the referral. There's a note in the record from Mr. Crockett's notes when he was discussing the case the very first time that refers to that. There's no doubt that there was an agreement that they would both work on the cases. And there's – Nevada – what is Nevada – I've looked at the statute, but Nevada law on referrals. First of all, it says something about the attorney has to remain – be responsible for the case. Does that mean there has to be counsel on the case? Was he counsel on the case? Does his – did Fitzgerald's name appear on the pleadings? No, it does not. In fact, that was an issue that was early on, whether this was a fee-splitting agreement or whether there would be – or whether Nevada allowed for a referral and whether that came under that rule or whether that was a completely different issue. Your position is that the fee-splitting rule doesn't apply to this? My position is that referral fees are allowed in Nevada. That that was an issue was whether or not referral fees were allowed in Nevada, that Judge Probe originally was going to certify to the Nevada Supreme Court because he was concerned about that. But later on, he determined that he – that those referral fees were enforceable in the State of Nevada by his decision. Without a fee-splitting provision? Without – he determined, and I believe that it's so, it's common in Nevada that there are referral fees without a fee-splitting provision, that it's a payment of a referral fee, and Judge Probe found that that was – was Nevada law, and that hasn't been appealed. So is there – the reason I'm asking this is because, at least in California, a 50 percent referral fee would probably be unconscionable and unenforceable. I don't believe that would be so in the State of Nevada. It happens – Counsel, why shouldn't we certify this question to the Nevada Supreme Court? You said, I don't believe it would be so, but we don't – I couldn't find anything in Nevada statutes or law that would answer this question. Why shouldn't we certify it to the Nevada Supreme Court? That might be an appropriate action, Your Honor. However, the reason I don't think it needs to be done at this point is because early on, Judge Probe made the determination that the agreement would be enforced by the Nevada Supreme Court, and that has not been appealed by anybody. So that's not really an issue in this case at this point in time. But isn't it also a problem that if you had – I mean, clearly this agreement provides – even if it provides – even if the referral – fact of referral went into the 50 percent, it still requires Mr. Fitzgerald to do something other than the bare referral. Not anything very distinct, but pay the costs and be a co-counsel, and he said he was going to be getting 50 percent for something in addition to the referral, even if he was getting it in part for the referral. He was getting the – they had agreed that he would get 50 percent of that as a referral fee and also that he would work the case. For free? That he would work the case for free and he'd get 50 percent? It was a part of the case. He was interested in the case. He wanted to be involved in the case because he was not only interested in making sure that there would be something to get, but also interested in the case because of his connection with the family before. And so even – I'd like to talk about the quantum merit issue. Even if he's not entitled to the referral fee, which we believe that he is entitled to that, and we believe that there should have been plural evidence to what the party's agreement was and what their understanding was, even if he was under-entitled to quantum merit, there – the district court accepted the argument that Nevada law would allow something more than just an hourly amount. In fact, the district court gave Mr. Fitzgerald an award based on the fact that he talked Mr. Crockett into reducing his – the rate of his contingency from 40 percent to 33 percent. And that resulted in a judgment or in a recovery by the client, which was $100,000. And so he gave him a third of that. The thing about that is that happened in the very first phone call. And that did not compensate – assuming the quantum merit value is the only value that's available, and we don't believe that that's the case – but that did not compensate Mr. Fitzgerald in any way for the referral. It didn't compensate him for the time that he worked on the case. Let me stop you there. How is the referral of value to the client in the end? It's recognized in many states where referrals are allowed and referral fees are allowed that there's a value in an attorney being wise enough to take a case, understand that they're not the person to really handle this case, and to bring that case to an attorney who is really in a position to maximize the benefit for that client. And there is a tremendous value in finding the client and referring it. But is that a benefit to the client beyond what the client receives in the case? I mean, in this case, the client had an agreement with the attorneys collectively setting the total amount of attorneys' fees. The client didn't receive any additional benefit beyond that, and your argument seems to suggest somehow the client should be tapped for some additional retural fee. I don't understand that. Absolutely not, Your Honor. The client's not tapped for anything. It comes out of the same amount – the client pays the same amount either way. What – there was a benefit to the client, and that would be – and looking at that, the fact that there's a benefit to the client is a basis for saying that there's some value so that Mr. Fitzgerald should get a portion of the fees that were paid because of that referral. He should get that referral for – in fact, it – Is there any sense – I don't know quite how to ask this question, but there was certainly a benefit to Mr. Crockett. But that, I gather, cannot be the basis for a quantum meruit payment on this retainer fee once he went? There was a benefit to the client because Mr. Crockett – But I'm asking you a different – I understand your argument on why there's a benefit to the client, and I don't necessarily disagree with it. But I'm also asking you whether there – if he had – if there was a benefit to Mr. Crockett, which there certainly – it appears there was, is there any theory on which that would be recoupable without a contract? I believe that they – that without an agreement between them, a referral fee agreement or some other agreement which they had – Well, there's this agreement. Probably not. There's an agreement that says that they're going to divide costs and some understanding that they would work together. And in the end, they didn't work together. But this – I mean, is this in any sense a contract between the lawyers which would lead to some quantum meruit between the lawyers, or is that simply not available? I think you would have to find the benefit on contract between the lawyers. But still, the benefit is there. Mr. Crockett would not have had the case. And so when you're weighing how that fee that was determined should be divided between the parties, that should be taken into consideration. I have only a half – I'm going to reserve time. I'd like to reserve it. Thank you. May it please the Court, my name is Samuel Lionel. I'm at the firm of Lionel, Sawyer & Collins, Las Vegas. I came to the courthouse today and remember the first time I argued a case in this court was at the end of 1954. I've now turned 90 years of age and I'm back again. It's many years intervening. We look forward to seeing you in another 50 years. Hopefully. Judge Pro originally ruled in this case that it was – quantum meruit was a sole means of recovery by Mr. Fitzgerald. And there's been no appeal from that. And I say that only because counsel did indicate that they were entitled to other things not under – as I understood it, not necessarily – Well, it would have been. I mean, you can only appeal one case at the end. So are you saying there's an argument that's been waived? Arguably yes, because there was no appeal from that determination by Judge – But there couldn't be. It was a prelocutory determination. You can only appeal a final judgment. So how could they have appealed that? There was no appeal finally from it. In other words, what I'm saying is, if I read the briefs correctly here and everything else, there is no appeal that says we appeal from the order saying we – that we're limited to quantum meruit. As a matter of fact, what is interesting in this case, when we went to trial, finally, and there were three reported decisions in this case prior to that, we went to trial solely on the issue of quantum meruit. Yeah, but that's because the district court had relieved the other claims or taken the other claims out of the case. But you can't appeal at that stage. I appreciate – well, the appeal – We should assume that the whole thing is here, because it's been briefed on that theory and it was only one final judgment. So let's go forward on that basis. Yes, Your Honor. Counsel says that this oral referral agreement, and whether there was one agreement or two agreements, it's a red herring. It's not a red herring. As a matter of fact, if you read the opening brief, they referred to the oral referral agreement no less than 50 times. And it comes in and out, and it's demonstrative – it demonstrates bad faith on their part. The history of that oral referral agreement is unusual. They filed a case in New York against Mr. Crockett and Ms. Nostro with a verified complaint, nothing in there about an oral referral agreement. That was – it was purely upon the retainer agreement. They amended that – amended that complaint, verified – Let me – let me – let me direct you to some more specific things. I understand the case has had something of a wandering history, and the theory might not have been razor-sharp from the outset. But we have an understanding of what the claim is. And – and one of the things that concerns me is why we should assume that the agreement between the attorneys for a 50-50 split documented in the attorney-retainer agreement is terminated by the client's election to discharge Mr. Fitzgerald. Why does her action terminate the agreement between the two counsel? Well, Judge – Judge – I believe Judge Proulx in two cases – in two instances in two reported decisions indicated that with respect to Mr. Fitzgerald, his role terminated. He didn't – he didn't pay his costs. He didn't do – have any responsibility as required under that agreement. But the provision in this agreement that says that the costs will be split 50-50 if there's a settlement doesn't depend on any – it doesn't say that Mr. Fitzgerald had to be the lawyer for Ms. Nostro at that time. It doesn't say that. But that is – but his – his having to do those things, pay the costs, and have a role in the case, and have – He said he was willing to pay the costs. I beg your pardon? He said after the termination that he was willing to continue to pay the costs. He never did. He never – He sends a check when he – We have a motion to dismiss here. We don't have a factual determination that there's been a breach. There's no summary judgment. So we're hearing a motion to dismiss, and I don't see the district court ruling that – that, well, there is an agreement, but Fitzgerald's breached that agreement by failing to pay costs. That's not the basis for the district court's judgment. And my question goes to a step before that. Why is it that agreement, the 50-50 split agreement, is deemed to have been terminated by discharge of Mr. Fitzgerald by the client? If the 50-50 agreement is between the two attorneys and the client's role in that agreement is relatively limited, I still haven't figured out why it is that 50-50 split agreement doesn't survive. Among other things, Judge Crowe said it should not survive, because if you had that type of a situation from a policy standpoint, you'd have one lawyer who was left in there. He has to do all the work, this other lawyer who has been terminated properly by the client. But it is true that this agreement does not require – it's a little odd in that way, but it doesn't require Mr. Fitzgerald to do anything. And, in fact, he wasn't doing much of anything. That was the whole point. I'm sorry. I missed that. The agreement does not require Mr. Fitzgerald to do any particular amount of work. And, in fact, he didn't. It required that he would have – So why was Mr. Crockett any better or worse off once Mr. Fitzgerald was out of there? Well, aside from not having his share of the cost, he no longer had any responsibility in the case. The client had discharged him. He was no longer involved in the case. But is it true that it is possible in Nevada to have a pure referral fee? No. Not with nothing else. As we understood the statute, it required that you needed, number one, consent of the client. And you needed that he still have responsibility with respect to the case. There was nothing flatly on it, but that was the understanding on the rule. That's the fee-splitting rule. It's the rule that's headed fee-splitting. The Nevada rule, which has a similar one. Did you – I don't believe it used the word fee-splitting. Well, I don't know what it used, but – okay. What – I mean, I have the same issue, I guess, as Judge Clifton, which is I – and to elaborate it a bit more, at a minimum, you sort of have a hanging question here when you read this contract, which is how does termination affect this 50-50 split, and why wouldn't that at least be subject to parole evidence? Why wouldn't it be subject to parole evidence? The fact that there's nothing in here that explains what happens in the event of termination to the 50-50 split agreement. So why wouldn't we then look outside extrinsic evidence to find that out? There was no extrinsic evidence with respect to that at any particular point. I thought that's the – the extrinsic evidence, as I understand it, is the notion that there was an agreement to split – to pay him just for the referral. Well, what evidence there was, and as I say, even though the case went to ultimately in front of Judge Proulx on the issue of quantum merit only, he permitted other evidence to come in, notwithstanding that, because it was a non-jury matter. But the – there was no – Just a minute. I thought he decided all of that in the pleadings, no? I thought he decided on the pleadings. Yes, he did. So he did not consider any extrinsic evidence with regard to the questions we're raising? That's true. But he did permit into the – into evidence that Mr. Fitzgerald testified that he wanted to do some work in the case that Mr. Proulx didn't – that the – that Mr. Crockett didn't permit it. But the record is unalterably clear here, and we – numerous citations in the There's quite a lot in the brief about that, and that's one of the things that frustrates me, because the claims we're talking about here – the alleged breach of the oral agreement for the retural fee, the alleged breach of the written agreement, the retainer agreement – those all went out on a motion to dismiss. And so to give me facts to suggest that in the circumstances of this case, Mr. Fitzgerald didn't measure up or didn't satisfy his obligation is to tell me something that's irrelevant to the decision made by the district court. The district court did not say, this agreement's enforceable, but Mr. Fitzgerald breached it, and as a result, he doesn't get what he wants to get. The district court said the agreement wasn't enforceable. He rejected it out of the motion to dismiss stage, failure to state a claim, parole evidence rule. And so the argument given to me now may be perfectly powerful during a trial and in trying to sustain a trial verdict, but I don't see how it helps you at all with regard to sustaining a motion to dismiss. Because as the judge said in his written decision, a reported decision, he said that at the point in time when he was discharged by Mrs. Nostro, his interest in that contract terminated because he did not – Well, that's the legal question I posed to you a few minutes ago, which I don't think I got very much of an answer. Maybe we could have diverted you, but I'll – I can only give you the answer which Judge Pro gave in his decision, which is substantially what I just recited. It was what? That Mr. Fitzgerald, upon the termination of the client, what by the – what in the client's action terminated Mr. Fitzgerald's agreement for the 50-50 split? Well, as Judge Pro said, at the point in time when he was discharged, that terminated his rights under that. I know he said that. What's the legal basis for it? I mean, that's what's on appeal. The fact that the district court says that is not something that's going to for the proposition that the termination by the client terminates the agreement between the attorneys. Well, he no longer had an – once he's terminated, he no longer had the obligation to pay his share of the fees. He no longer had a legal responsibility with respect to the client's case. He no longer had that. And Judge Pro said, and I – that under those circumstances, he no longer had any rights under that agreement. Let's go, because your time is running, to the quantum meruit issue for a while, for now. Why isn't Mr. Fitzgerald's attorney correct that the way the quantum meruit was figured gave no value to the referral, which obviously had value, so that there should – either – there was testimony that Mr. Crockett's ordinary referral fee was one-third, i.e., he would have paid Mr. Fitzgerald one-third simply for the referral, even if he hadn't signed this for a trainer agreement. So why wouldn't – shouldn't he get that, the one-third that he would practice, the value of simply the referral? Because there was no agreement to pay that. Judge Pro found as a fact. I understand that, but the question – You're not talking about an agreement. You're trying to substitute for the lack of agreement to figure out the value. And if that's what the counsel ordinarily does, why isn't that the value? Respectfully, I don't remember that issue ever coming up, that they were entitled to a value for purely referring that case. That is novel. And I think – Well, let me think. You recognize – Nobody looks particularly good on these facts. Let's be blunt about it. As a lawyer, I can't say that anybody's thrilled about how this played out. There's enough embarrassment to go around. But what we have here, in the events that took place, the only person that really profited from what happened was Mr. Crockett. And he profited big time, because he's going to get a half million dollars, he hopes, or a half million dollars less, 33,000, instead of a quarter million dollars. Now, he received benefit in having the case come to his office. And there appears to be undisputed testimony that he and, like most lawyers that practice in that field, are willing to pay referral fees, not expecting the referring attorney to do anything more than the canon of ethics require them to do. And that testimony, as Judge Burr is unindicated, suggests that Mr. Crockett was willing to pay as much as one-third for that. Doesn't that suggest value in the referral of one-third of whatever the ultimate share or attorney recovery is? I cannot dispute that that's an argument. The argument was not made below that there was any value to that. I don't believe there is any value. I don't think a lawyer has any right. Well, but there obviously was a value to the client, because she didn't know how to find a lawyer in Las Vegas. And she went to this person in Buffalo who wasn't going to try a case in Las Vegas and didn't know Nevada malpractice law, which I gather is somewhat arcane. And he, using his professional contacts, found her lawyer in Las Vegas, which who apparently she could not find herself. That has value. Why isn't he getting paid for it? Because he was discharged from the case, and Judge Crowe said, and I agree, that he, because of his conduct in the case. But he had never undertaken to be a co-counsel at all. It still had value. And it was presumably somewhere in that 50 percent, because 50 percent is a pretty high amount of fee splitting for someone who isn't expected to do hardly any work in the case. Well, I understand where the court is coming from, but it's really a novel concept to me to say that somebody under quantum error is entitled to it. And I understand what Judge Clifton has said on that issue. Before I sit down, may I spend one more moment on Judge Crowe's, I might say, parsimony with respect to fees. I sat here and I heard a moment ago about Judge Crowe. We believe clearly, when you look at this record, that the oral referral agreement was really a bad faith thing. That Mr. Fitzgerald had testified that in his first amended complaint, he said that that oral referral agreement existed independently of any other agreements. When his deposition was taken, he said, well, there was only really one agreement. Notwithstanding that, he filed a second amended complaint in which he sued under both of those agreements. I'll say something else about that. This is all being determined under the rule about making settlement offers, right? The reason why the fee was being requested has to do with the fact that there was a settlement offer made and the ultimate judgment was slightly less, just slightly less than the... So one other question about the quantum merit is, why isn't he at least entitled, in addition to the $33,000, to the hours he actually put in? Because the $33,000 was assertively, it was an attempt to do something on the value of the referral by saying that what he did do was convince Crocker to charge less, so that there was a value to the lawyer, to the client for that. But there was also time put in. So why don't you just at least add in that time put in, in which case it then goes over the offer that was made and the whole issue goes away. I might say I think the $33,000 is really a double dip. Here we have Mr. Crocker reducing his fees effectively by $100,000, and I say $33,000 is a double dip. But aside from that, on two occasions, Judge Pro specifically said that the court fully considered the actual hours devoted by Fitzgerald to the Nostril case in assessing an award of $333,333. That was in conjunction with a motion to alter or amend that was made by Mr. Fitzgerald. Earlier on at the time of the award, he said in his findings, the court's judgment of respect is guided by the actual hours Fitzgerald devoted to the case and the relative value of his services rendered as compared to Mr. Crockett's, who he said did all the meaningful work. And one other reason why we feel that... But counsel, let me just interrupt here. He never once mentions the value of the referral. He said, I've taken into consideration the hours and so forth, but he never says anything about the value of the referral. Am I correct? No one ever said anything about that cost of the case. One other thing, another reason why we think Judge Pro abused his discretion in failing to award fees is the fact that he said that the $35,000 offer. You have a situation where the other members of his firm, their time and everything came out to $2,900. If you take it $3,000, you take it off to $35,000, you got $32,000. Mr. Fitzgerald had 17.2 hours. That comes to over $1,800 per hour. We think the rejection, because he really did nothing here. The record shows we couldn't get these medical records, which he had, which Mrs. Nostro had gotten from the prior attorney and given him. Okay. Thank you very much, counsel. Thank you. Could you tell us whether this argument about the quatrium area and further referral was, in fact, made in the district court? Whether it was addressed in district court, Your Honor, we addressed that issue from day one. The very first argument that we made was that quantum era could be more than just for the hours and that there was a, that it could involve, include the value of, and could be the amount of the contract price itself. We talked about referral and the value of the referral from the beginning. It was always a part of the case. So what happened during the trial was, was there any constraint on what arguments could be made for, on the quantum area or was this argument made, for example, in closing argument or otherwise? I, I wasn't present for the trial, so I've only looked at the transcripts. I don't believe that there was any, this issue had already been resolved. And so the issue that was being resolved during the trial was simply the quantum area value, and there was no restriction on the party's ability to present the evidence that they had on that issue. It was always our argument, however, from the beginning, Your Honor, that there was a value to the referral. And it wasn't true that it was, that, that the very first ruling was that we could only have quantum merit value. The very first ruling was that we could re-plead to plead that we still had contract claims. Those were only dismissed then shortly before trial on the motion to dismiss, which was a 12B6 motion. If we were to think that there was a value in the referral, which wasn't taken into account in the quantum area, would we then have to go back to the legal issue that Judge Proh was going to certify to the Nevada Supreme Court and didn't in order to find out whether it would even be legal to have that referral fee? Judge Proh determined based on his review and on the motion practice that was going on at that time, that the referral fee would be enforceable in the state of Nevada based on Nevada law. And they have not appealed from that determination. So that's not an issue in this case, whether that would be enforced. Finally, I only have a few seconds left addressing... Your deficit would be... I'm sorry? The light's red, so you're... Oh, I'm sorry. The number's going up. But if you have something else to say, I didn't mean to cut you off. I just wanted to say that Judge Proh did consider all of the baby factors when he did the attorney's fees thing. So the suggestion that he didn't is just speculation. Okay. Thank you very much. Thank both counsel for a useful argument in a hard case. The case of Crockett v. Fitzgerald, Crockett and Myers v. Fitzgerald, is submitted and we are in recess until tomorrow.
judges: Nelson D. W., Berzon, Clifton